We'll hear argument next in Case 12-7515, Barrage v. United States. Ms. Campbell. Mr. Chief Justice, and may it please the Court, Marcus Barrage is serving a 20-year mandatory minimum sentence for selling heroin that, according to the jury instruction that was given to the jury at the time of the trial, was not the primary cause of the  This lesser standard of contributing causation was neither articulated by Congress within the words of the statute, nor was it generally accepted at the time the statute was passed as an acceptable version of causation. Congress's selection of the word results instead should be interpreted to mean the traditional notions of causation, those of factual cause or but-for cause and proximate cause. Now, the parties don't disagree that results in means causation, that it's a causation analysis. And regardless of whether you look to the common law or the treatises or the legal commentators, causation triggers at the very minimum a but-for causation analysis. In this particular case, but for the use of the heroin, the victim would not have died. Now, the Solicitor General suggests a lesser causation standard, one that expands the notion of but-for causation. But if we instead look to the case law and this Court's precedent, we are not actually trying to expand but-for causation in most cases. We are trying to limit it, because but-for causation can be extrapolated beyond what we are willing to give liability for. Ginsburg. How would you respond to the hypothetical that the government poses on 24 of its brief, that is, the three drops of poison, each defendant puts in one drop, one drop will not do it, three drops will, and none of them would be chargeable because it takes three drops? Well, I would disagree with the premise that they are not chargeable. Each individual person that put the drop of poison in that cup could be charged with attempted murder if they were trying to kill the person. But under standard causation analysis, you do not have but-for causation. Each individual drop of poison was not the but-for causation, and so you don't have causation. But you would if you knew that there were two drops in and you added the third drop after the two drops, right? I'm sorry, I've lost sight of this. Is this each drop is enough, or? It takes three drops. In the government's hypothetical, each person individually puts in one drop and you need three drops in order to kill the person. All right. Well, there's but-for causation when you are the third person. Your drop caused the death and the death would not have been caused without your drop. That would be correct, that there would be but-for causation. But each one is the third person. I mean, each one of them is the third person. It seems to me each one is a but-for cause. I don't know why you don't say there's but-for causation there. Well, as I understood the evidence in this case, the experts testified they could not say that he would not have died but for the cocaine. That's quite different from this case where what is put to you is he you could say he would not have died but for the drop that each one of them put in. Yes, you could say that. And that and. So why isn't that but-for causation? It's a form of but-for causation that I think. I don't care. A form of but-for causation is but-for causation. It can be. And I think that specific hypothetical, while it warrants special consideration by this Court whether or not in criminal context we're going to expand criminal liability to that, is not this case. Well, I thought the hypothetical was a bit different. I thought it only takes two drops to kill him. And that's what creates the problem where you don't have but-for causation because you don't know whether you are the extraneous drop or whether you are the drop that actually killed him. Correct. If there is a hypothetical that changes it just slightly, you would not have but-for causation in that circumstance because each individual drop was not the but-for cause. And that's more like our hypothetical. Again, with the poison hypothetical, because it's an intentional act by the defendant, you would still have liability, criminal liability, for attempt or assault or something along those lines, but you would not have each individual person liable for the actual death. Now, part of your argument is that but-for causation isn't sufficient, right? It also has to be foreseeable. Correct. Is that your argument? That is our argument. Give me an example of a situation where a heroin dealer deals or sells drugs to somebody and foresees that the drugs that are sold will cause death. Well, I think you can look to the actual case law. There's, for those types of hypotheticals, when the heroin dealer is actually using with the particular purchaser of the heroin and knows that he's overdosing, if the heroin dealer is the one injecting the drugs into the system, certainly those circumstances are foreseeable. And the government actually- Those are very unusual circumstances. In all other circumstances where somebody is just selling heroin, there wouldn't be foreseeable. So the statute wouldn't be foreseeability. The statute wouldn't apply. No, I disagree with that. Foreseeability could be read into those circumstances where you simply have a heroin dealer that is selling heroin, and you would take that foreseeability question, the proximate cause question, and you would charge it to the jury. I think foreseeability is the wrong word. I don't think, you know, in tort law we use the word foreseeability for Paul's graph. It's a matter of scope of the risk. It may not be foreseeable. It may be an unusual situation that will cause it, but it's within the scope of the risk. And when you sell drugs, you know that one of the things that can happen is that the drugs will produce an overdose. I'm not sure. I wouldn't call it foreseeability. I'd call it scope of the risk. Both scope and the risk and foreseeability are versions of saying proximate cause, and which either standard in this circumstance would be better than the contributing cause standard that was given to the jury, because it did not use scope of the risk language. It didn't use foreseeability language. It didn't use reasonableness of the problem. Sotomayor, I think this is all being sort of tied up together. I always thought foreseeability and proximate cause were the same. I think the issue is it doesn't do with either foreseeability, scope of risk, or proximate cause. It has to do with what you started with, which is what's the level of factual causation that we want to set? What definition are we going to give for the legal causation standard? And you're saying that it has to be but-for. Our position is, I agree with you, Justice Sotomayor, that the main issue is this but-for causation issue. That if we are correct that but-for causation should be read into a criminal statute, as we believe it should in these circumstances under this statute, that the appropriate question is whether but-for the heroin they would have done. Sotomayor, let's assume that we are troubled by the examples that have been given. If two people or three people come together and each puts in a drop of blood, either knowing that only one drop is necessary or that all three drops are necessary, if we don't want to let that person off because it doesn't seem logical, okay? What would save your case anyway? Is there a different proximate cause standard but not involving but-for that would still get you what you're looking for? Yes. And I don't think you need to look to causation to get to that answer. And what do we look to if we're not looking to causation? Well, if each individual person in the poison hypothetical is working together and knows about the other people, then you have conspiracy liability. And they would be liable for the actions of the other people, of the other person that has put the poison in. And you could still do that. Sotomayor, why does it matter if you know that three people hate someone and they're acting independently? Each one intended to kill the guy and was, you know, that the other two joined in was lovely. But we don't know which drop did it. We don't particularly care, do we? In that particular hypothetical, then the other two. There's no conspiracy. How do we save this case if there's no conspiracy? Then you have attempt liability. And those people would still all be criminally liable for attempted murder. Breyer, model penal code, the Brown Commission, everybody says this is a famous law school hypothetical. I thought you'd never refined it in reality. They say certainly there is liability where two people strike, each strikes a mortal blow independently. And everyone seems to agree there's liability there. And even though no blow, neither blow is in fact a but-for condition, because in the absence of blow A, he would be dead anyway from blow B. All right. So we start with that, I thought. And now starting with that, you can say I don't want to start with that. I think that all Professor Wexler and Professor Hall and all these people famous in my day were wrong. Okay. That's up to you. But if you do take that as a basic assumption, then how do you win? I think that was the question. And there may be an answer to that. Yes, Justice Breyer, there is an answer to that. The hypotheticals that are posed by Professor LaFave, which is the one that you are citing, actually can be answered by the use of the substantial factor language. Now, when you have two independently sufficient causes which act upon an individual causing the death, you have a but-for problem, because but-for, but the actor A, B's blow would still kill the person. In that limited circumstance, the common law already addresses that. And you use the substantial factor language, which we have did at the time of trial, tried to incorporate into our jury instruction, which was rejected by the trial court. And so that is limited to those circumstances where you have two individuals. Scalia, what is substantial factor? I mean, I don't follow you. I don't see how it gets you to where you want to be, unless substantial factor means that it would have been a but-for cause. That is our position, that substantial factor is appropriate when it would have been a but-for cause. You either need independently sufficient cause where but-for cause is only failing by another independently sufficient cause. So when you use that language of substantial factor, what you really mean to point to is independence efficiency. Two people shoot, either one would have killed the person, but you can't say that either is the but-for cause because of the fortuity of the second happening. Correct. That is the traditional reason why you would use the substantial factor instruction. So you don't mean that to go any further than independence efficiency? We do not mean it to go any further. And I don't believe that the case law or the treatises take it any further. There is this other hypothetical. It's a strange terminology for it. I mean, they really ought to get another terminology, if that's what they mean. We agree. You can be a substantial factor without being independently sufficient. You could under the common use of the word substantial factor, but at least substantial factor would have been better language than contributes to or plays a part in that this jury heard. Largely. It would at least give us the opportunity to argue that the heroin was not the substantial factor to a jury in a factual question if substantial factor does not mean independently sufficient cause. But it's our position that at the time of the passing of this particular provision, substantial factor meant to address the circumstance where you have two independently sufficient causes. So regardless of whether you use substantial factor as being independently sufficient cause or some other sort of formulation of the language of substantial factor, you still have this problem that the jury was not instructed on even substantial factor. They were instructed on contributing cause. That you do agree that an overdose, there's a foreseeable risk that someone who purchases heroin will overdose, that there's a foreseeable risk of that. I concede that in a heroin case, that is a question for the jury, that you would charge foreseeability or proximate cause to the jury in those circumstances. Kagan Well, I guess here's what the government might say back to you. They might say, you know, in these drug cases people often take drugs in combination and then they overdose. And it's really impossible for anybody to be able to say what you are requiring an expert to say. In other words, it's impossible to say it was the heroin, not the cocaine, it was the cocaine and not the heroin. It was both. It was neither. It's just all we can talk about is likelihoods, you know, just as this expert did. They say the fact that he took the heroin made it much more likely that he would die. And that's all we're going to be able to show in a case like this, and because of that, we need to be – that's got to be enough. And I would agree that that's their argument, and that's an argument that should be presented to Congress to amend the statute, to incorporate language that addresses that. Congress knows how to address a contributing cause standard. They've said it in numerous other statutes, that a certain act contributes to a death, that the result is in whole or in part a result of the defendant's actions. They've said it. They know how to say it, and they could say it again in this statute if they wanted to. Alito, let's compare what the situation that Justice Kagan just described with this situation. The heroin dealer sells a user, I don't know, a three-day supply, a four-day supply, whatever it is, and tells the user, now, you know, you should only use this much per day. But the user goes off and injects the whole amount and dies as a result of an overdose. Now, why would Congress want to punish that person where the overdose, where the heroin sold, is the but-for cause of death, and not the situation where there's the multidrug cocktail? Well, in the absence of language to the contrary, this statute actually says the use of this substance, the substance sold by the defendant, results in a death. And so when we start by looking at the words of the statute, they don't say these common words that you could use to encompass those circumstances. Well, I understand that that's a textual argument, that maybe the text can be read both ways. Assuming it can be read both ways, why would Congress want to attach these severe consequences in the overdose case and not in the drug cocktail case? Because Congress would want to target a situation where there has been proof beyond a reasonable doubt that the defendant's actions were the cause of the death. Well, for any crime, there are two things. One, we punish the intent, the wickedness, and in both cases the party is equally wicked, but we also punish the consequence. In one case, the party dies because of that person's act, and in the other case, nobody dies just because of that person's act. I don't know why you have to run away from that. It's common in the criminal law that the two acts that are equally unlawful, equally nefarious, one happens to kill somebody, the other one doesn't. We punish one person, we don't punish the other. That would be true. And what I was addressing in Justice's hypothetical was that you can't read congressional intent into the selection of the words within this statute. And if Congress intended to punish multiple drug cocktails all equally, they would instead have written the statute to address the cocktails. Well, it said, the statute says results, right? Correct. And so we're asking about results. Justice Alito's hypothetical, he gives a 3-day supply. Suppose he gives a year's supply and he overdoses the next day. What result? I believe that would be a jury question. No, no. As a matter of law, is that a violation? It would be if he takes the heroin and the heroin is the cause of the death, then, yes, it's a but-for cause. We would then add that you should have approximate cause analysis, which is the juries are in a unique position to determine whether or not foreseeability is appropriate in that circumstance. All right. Suppose we go back to Justice Alito's example, and it's just a 2-day supply. And there's statistics that a 1 percent of heroin users overdose. Is that sufficient to establish liability under your foreseeability standard? Not as a matter of law, and not to the degree that the Solicitor General urges that it's a per se foreseeability. Foreseeability is still always going to be instructed to the jury in that circumstance. And they can argue that certainly 1 percent is sufficient, and the defense can argue 1 percent chance is not sufficient and can attack the number. Well, the question is what the legal standard is. I'm the juror. I said I want to know, does this suffice to impose liability? And you say, well, if you say it is, does it or doesn't it? That's a fair question. You can't say, oh, well, it's up to the jury. We don't know. I want to know what the rule is. The juries have to follow a rule. The rule is the language of the approximate cause instruction that you give them. And while there are different formulations of that approximate cause instruction, you would instruct the jury for whether a reasonable person in the position of the defendant would be able to foresee that consequence. And I would say, my goodness, if only 1 percent overdose, that isn't very foreseeable. I, you know, I don't think you have to submit that to the jury. I think that's one of the reasons we ban these drugs, because they are risky and anybody should know that if somebody dies from it, it's within the scope of the risk when you sell the cocaine. Now, I guess it's different if you're selling, I don't know, sleeping pills, okay, which are part of a cocktail that causes somebody to die. That's the situation that worries me. It seems to me if the cocaine, the person selling the cocaine can be liable for the cocktail death, I guess the person who sold the sleeping pills could as well. Well, in that circumstance, in our specific factual circumstance, each individual person that supplied any of the drugs to the victim in this case would be equally liable. But if one was, the heroin was illegal, was not, selling of the sleeping pill is not illegal, it's perfectly lawful. Selling heroin is illegal. Doesn't that make a difference? Selling sleeping pills can be illegal if they're sold to someone that does not have a prescription, if they're sold on the street. The OxyContin that was used in this case was not procured legally. The marijuana in this case was not procured legally. There was no evidence whether or not the other prescription drugs, the multitude of prescription drugs he had in his house, were procured legally. So assuming that the conduct of the person distributing the drugs were each individually violating the other provisions of the statute, it would be equally liable under the theory that they only had to contribute to the death of the individual. Alitoson I don't see how this foreseeability test would work. You'd have testimony what this particular user looked like a healthy person, so there wasn't foreseeable that that person was going to overdose. This other one looked kind of shaky and irresponsible, and who knows what the person might do. That's what we – that's what the jury would have to evaluate? There are certain facts that could be read to a jury. In each individual case, they would differ. And you can look at the case law, especially regarding this death result. Well, what sort of facts? Suppose you have the heroin dealer or you have the responsible heroin dealer and wants to sell heroin but doesn't want to cause anybody to die. What would be kind of the checklist that the person would go through? All right, I'm going to sell this. I take the risk of a drug conviction, but I don't want this death results business. So a person is well-dressed. A person is – what would be the factors? Well, I think you could look directly to the Eighth Circuit's opinion in the McIntosh case and the factors in that case, where that particular person manufactured methamphetamine and specifically said, I do not want my methamphetamine to go to this person. None of the meth should go to this person. But his meth ended up going to that person, and that person overdosed and died. In that circumstance, that would be a fact that we could argue to the jury on the defendant's behalf, using the appropriate proximate cause standard, that that was not foreseeable and not an intended death. All right. But I want my – I want the checklist from my responsible heroin dealer on the street corner. What does this person go through? Well, I don't think there can be a checklist. That's why proximate cause and foreseeability is always charged to a jury, why it's uniquely a jury question. Whether this – whether there's an experience with this particular user, whether the person that's selling the drugs knows the user has overdosed in the past, whether there's something within that particular drug that is stronger than normal heroin. Do you have any – I mean, what type of heroin user is more likely to overdose and suffer death, a first-time heroin user or an experienced heroin user? There are no facts in the record that reflect that. The evidence within the record indicates that this particular user was an experienced heroin user and that people who use heroin on a regular basis actually develop tolerance to heroin. So it would take a higher amount of heroin for that person to overdose. That's what's in the record. Now, the studies that are cited by the Solicitor General indicate that there have been some sort of research. We don't have access to all of those documents, but some sort of research regarding heroin addicts. And when you're dealing with heroin addicts, that number is less than 1 percent using their – their research. Heroin addicts are less than 1 percent likely to die. Those types of factors could be used in formulating a foreseeability analysis. But, of course, you can't just rely on the foreseeability analysis. You should always incorporate this but-for analysis. And in a but-for analysis, you would also be dealing with a situation where you have multiple drugs. And so it not only informs our discussion about whether or not the heroin was the but-for cause of the death, but also whether in this particular circumstance this particular defendant could foresee that this particular person. Kennedy, I just want to get your position, as a matter of law. Let's assume 1 percent of heroin users overdose. Dealer sells to an addict, has never seen him before, doesn't know anything about his age background, and he just sells him the drug. The heroin addict overdoses, liability or not. Can there be liability under those facts? It would be our position that there could be liability if properly instructed to a jury. But it's just up to the jury to decide whether it was foreseeable or not. Correct. And you cannot say, as I – as I think I say, that if you sell cocaine and if it is without a doubt the but-for cause of somebody's death, you're liable under this statute. You don't think that's the case? We disagree. And, Justice Scalia, I would point actually to the – this Court's precedent in the civil context, where you read proximate cause and foreseeability into almost exact same language. No, but in the civil context, you have strict liability. This is, in a way, strict liability and seems to me quite proper. In the civil context, when it's explicit. A drug company, if it doesn't take proper steps, is liable even if 1 percent of the users are adversely affected? You, in a strict liability circumstance, would have a statute which writes in strict liability. This statute doesn't write in strict liability. It doesn't use the facts. Ginsburg, before you finish, I mean, you've used words, foreseeability, but for – are you saying, to make it very simple, that unless the government proves that the heroin independently would cause death, then no conviction? The heroin must independently cause the death. Is that? Only in the circumstance where you have two independently sufficient causes do you reach that question. We don't think you need to reach that question here. That's why we didn't argue that at the motion of judgment of acquittal stage, because you don't have standard but-for causation, and that failure was not as a result of two independently sufficient causes. If I may reserve my time. Thank you, counsel. Ginsburg, you've been saying except for the heroin ingestion, the death would not have occurred. The – that's the primary argument, that except for the heroin, the factual basis of this case is that if you remove the heroin, the doctors are saying he still might have died. And that is what defeats the but-for causation. Thank you, counsel. Thank you. Mr. Horwich. Mr. Chief Justice, and may it please the Court. The situation here is very much what Congress had in mind when it sought to hold drug traffickers responsible for the results of the use of the dangerous substances in which they deal. It's perfectly ordinary to speak of a drug as contributing to an overdose, and in the context of the Controlled Substances Act, there is no room to argue that a heroin user's overdose death comes as a surprise. So one little – one little grain of heroin that you discover is in the body and that person's going away for whatever it is, 20 years? No, I don't think so, Mr. Chief Justice. And let me explain, because I think the concern that arises with your hypothetical, which doesn't arise on these facts, presents a different issue than what's in dispute before the Court right now. The dispute between the parties is what kinds of – on the causation and fact side of the case. The dispute is between what kinds of causes can qualify at all. Do they have to be but-for causes, or can a contributing cause count? Now, there's a separate principle, which is reflected in jury instructions and reflected in the substantial factor concept and so forth, that causes that are causes in fact, but are too insignificant or not important enough or too insubstantial, are not properly the basis for criminal responsibility. Now, that's – that's not the dispute before this Court. Can I just – Kagan. Well, Mr. Horwich, I mean, it seems to me that the dispute before this Court is this. You have somebody, he's taken five drugs, one of them is heroin. And the – the experts get on the stand and they say, did the heroin cause the death? And the experts say, we really can't say whether the heroin caused the death in the sense that if the heroin – if he hadn't taken the heroin, he wouldn't have died. So they say, well, what can you say? You say, well, what I can say is that if he hadn't – is that the heroin made it more likely that he died. Well, how much more likely did he – did the heroin make it? Well, the heroin made it 50 percent more likely that death resulted. Would that be sufficient? I – I think probably yes, although let me – let me explain that we – why we see the nature of the expert testimony as actually different than what you're describing there, because it's – Well, take mine, because I think that that's actually a pretty accurate – Oh, I'm sorry. I didn't mean the expert testimony in this case, but in general, what experts are testifying to when they're testifying to that. They are not testifying to some uncertainty about whether the defendant's drugs played any role at all. This isn't a question of, say, yeah, he bought heroin from two different dealers, he took one of them and he died, but we don't know which dealer it was. In that case, we totally agree that that sort of uncertainty means no liability. What the experts testify to in these cases is that the primary cause of death, which is essentially central nervous system depression that leads to asphyxiating on stomach contents or saliva or something like that, was a process to which a number of substances contributed. Yes. And he might have died even without the heroin, because all the other substances might have been perfectly adequate to cause death. So I really can't tell you that the heroin played, you know, even to use your language, I can't tell you whether the heroin contributed. All I can tell you is a likelihood, a probability that the heroin led to death. Well, the experts here, of course, did testify specifically that the heroin did contribute to the death. So, but the experts were very careful to say, I cannot tell you whether the heroin contributed to the death. I can tell you that in the absence of the heroin, he wouldn't have died. He might have died even without the heroin, the experts said. The only thing I can tell you is that the heroin made it more likely that he died. I guess maybe I can respond to that with a perhaps more conventional hypothetical. If you imagine that you have three assailants who independently or simultaneously set upon the victim and beat him to death, and the victim could have survived any one of them, in that situation, you might well have testimony from a doctor that says, well, I can't tell you, he probably would have died, even I can be sure he would have died from the other two guys. But I think in that scenario, we would certainly recognize that the — that each of the assailants is responsible for the victim's death. We wouldn't say, oh, well, he assigned it to somebody else. We would say, well, you know, we're just using the hypotheticals rather than the facts of your case, you know. Because the facts of your case are that the expert gets on the stand and says, I can't tell you that the heroin was responsible for the death. I cannot tell you that in the absence of the heroin, he wouldn't have died. What I can tell you is that the heroin was — what I can do is to give you, essentially, a probability that the heroin caused the death. And you're saying that's enough, even if the probability is as small as 50 percent. I don't think — the experts here did not testify in probability figures in that way. What they testified to was that that — was that the heroin contributed to the set of drugs that were responsible for the actual hemorrhagic cause of death. It contributed to the set of drugs, but they didn't say that it contributed to the death. They had no idea whether it contributed to the death. All that they were able to say is there are five drugs, here are some probabilities, here are some likelihoods. You don't like the probability language? Here's the likelihood. Using heroin made it more likely that he would die. But we can't say that using heroin killed him. That — and it is that aspect of the testimony which is why we concede that if you apply a but-for test, that testimony does not establish a but-for test. Kagan Well, how much more likely does it have to make it that he would die? You said 50 percent? It's not a— Oh, about 30 percent. The relevant question is in a contributing cause analysis, at least in the first instance, setting aside the substantiality question that the Chief Justice's hypothetical raised, the basic question in a contributing cause analysis is whether the drug, in a case like this, contributed to the physical — the internal physiological effects that culminated in the death. And I would make a distinction here. For example, if you look — consider the marijuana in this case. The testimony here does not even establish the marijuana as being a contributing cause, because the toxicologist — the toxicologist testifies, this is at Joint Appendix 193, that the — every drug on this list, with the exception of the constituents of marijuana, have central nervous system depressant effects, and then goes on to explain why it's those effects that are what — that's what's going on in the body that's leading to the death. So, again, we — so we would agree that if you apply — if you insist on a but-for test, then correct. These sort of probabilities don't — don't get the government, even to the jury. That's a directive verdict. What I want to — what I'd like to point out, though — so I guess what I'd like to discuss is why the but-for test is not the right test to be applying here. And the key— If I were a member of a legislative body, considering what I would want to happen in this situation, it's kind of a frightening thought, but if that were — I would want to know what kind of testimony medical experts can reasonably be expected to provide in cases like this, where there is the ingestion of multiple drugs. If it is possible in most cases, many cases, all cases, a high percentage of cases for them to break this down probabilistically. There was a 50 — this made it 50 percent more likely, 90 percent more likely, 10 percent more likely. I might want to go down that road. But if it's not reasonable in a lot of these cases to go further than what the experts did in this case, that would make a difference. Now, can you tell us what realistically can they do in these cases where there is the ingestion of multiple drugs and the consequence is death? I can't represent to be informed enough about sort of the range of cases, but I think the testimony in this case is actually informative on that point, because there are a number of uncertainties to which the experts testified that show why it is from — why it is, from their point of view, essentially impossible to disentangle the effect of one drug and another drug when they are having the same effect on the victim. They are doing the same thing to the victim's central nervous system. And so it is — it's the sort of thing that it's meaningless to speak of one drug versus the other as being the cause, because they are all in the body, they are all doing the same thing. Scalia. Congress supposedly knew that and could have written a statute so that you are liable if you are a contributing cause of the death. It didn't do so. It says it has to result in the death. And I take that to mean at least, at least but for causality. Why should result in and not mean but for causality? Well, we would take Congress to have been incorporating the rules settled on generally in the criminal context. Why? This sort of problem. And though it is ruled. Why does result in refer to what we do in the common law? I mean, I apply common law rules when Congress adopts a common law crime. Yes, it brings along the soil that goes with that crime, right? But this is not a common law crime. And Congress used the English language, results in. And I would take that to mean causes. Well, we do take it to mean causes, but courts applying the concept of causes. So that's why we think that Congress would be intending to borrow courts' approaches to causation in common law cases. And I think there is a key insight in those cases. And we cite a number of them going back 100, 120 years in our brief at pages 19 and 20, 21, 25, and 26. And the key insight in those cases, which I think Justice Sotomayor touched on, which is that if your test for causation, say a but-for test, is producing a result in a case that nothing and nobody was the cause of the victim's death, you need to rethink your test for causation. It's not producing sound results. I accept that. And so, Justice Breyer, that's what's going on in the treatises that then say, well, in these other cases we're going to say, well, these independently sufficient tests. That applies in common law. Here, I accept that the — first of all, there's no problem of intent for me, the reason Justice Scalia pointed out, that anyone who sells heroin to someone is reckless, at least, in respect to the possibility of a death resulting. So I think that's enough to bring them within the intent problem. Also, there was a death here. Fine. But still, you have to show cause. And this is this unusual situation which the Brown Commission expresses itself upon and which the model penal code didn't. And the model penal code did express itself on what they call in the Brown Commission concurrent causes. All right? It has to be a but-for or a concurrent cause. But a concurrent cause is the situation where there are two people striking a mortal  Therefore, either is sufficient. And if, in fact, the second wasn't sufficient, then the first is a necessary condition. All right? So here we have the separate problem which has been pointed out, that not only we don't know if the others were sufficient, nor do we know if this was a necessary condition. And Brown and five States tell you what to do in such a situation to fall within the definition of cause. And the model penal code, where you had Professor Wexler debating Professor Hall with Dean Griswold throwing in the odd comment, decided not to tell us its view. Okay? So that's where I stand. And you can correct that if you want, but I'm beginning to think that probably at least it should be important in such a situation and that the word substantial better connotes the idea of it being an important factor than the word contributing, which means it picks up all kinds of quite unimportant factors. That's where my thinking is. And anything, I just say that in case you want to respond. I do. I have, I think, two very important things to say in response to that. One of them is, as I was sort of suggesting with the Chief Justice, if the dispute is over whether it should be a substantial contributing cause, then I think we're happy to argue that the jury instruction gets in that direction and at a minimum there's harmless error. Because of what you mean by substantial. Well, I think. Opposing counsel says substantial means that it would independently have sufficed. Well, I think that's right. If that's what you mean by it, we'll all cheer. But I suspect that's not what you mean. Well, it's not what we mean. That's not what was found in this case, right? Well, I would point out, I would point out that I'm reading from the Washington State Christman decision, which is the only decision that parties have cited that's actually factually deals with this scenario. And it says, Under the substantial factor test, all parties whose actions contributed to the outcome are held liable. So I think that's very much in line with what we're saying. I'd also say that the Brown Commission and those. That's what you call a substantial factor? It all contributed to the outcome? The one grain of heroin would, would, would. No, because we think it does, we think it does have to be substantial. I think that's, that's my words of judgment. I don't agree with that. Well, all parties whose actions substantially contributed to the outcome. So then you're, you're saying that the government's position is that contributing factors should be a substantial contributing factor. You're happy with that? I think we would not, we wouldn't have an objection if the Court states that as the law. Now, if the Court does that, it would be appropriate, I suppose, to ask the court of appeals to examine the record here. And to say what is substantial, what do you think is substantial, 10 percent, 20 percent? Well, I think substantial. 5 percent, what? Substantial, I wouldn't put it. Well, I would put it in relative terms, right? The question would be is this cause substantial, well, relative to what? Well, relative to the other causes at issue. And we have here overwhelming testimony that the heroin. So is that the question? In other words, is the heroin more likely to have caused the death than the cocaine, than the marijuana, than the sleeping pills? So we can't really say that the heroin caused the death, but it's more likely to have caused the death than anything else he took? Is that the, is that the question? Well, we know that it can, we know two things. One, it causally contributed in a way that, say, the marijuana did not contribute to what the experts are testifying was the physiological process. And two, within of the things that contributed to that, we would agree that the insubstantial, the one pill out of a thousand hypothetical, would certainly not be substantial. Now, how substantial, I guess, is going to be very fact specific. Here, it's. I mean, one question is how this all relates to the beyond a reasonable doubt instruction in criminal cases. I mean, the idea of a test which focuses in the way yours does on probabilities and likelihoods, and then we go tell the jury, find beyond a reasonable doubt that this was more likely to have caused the death than anything else, or find beyond a reasonable doubt that this increased the likelihood of death by 50 percent. I mean, that seems a very odd kind of question for a jury to consider, but that's exactly what you would be asking a jury to consider. I disagree with that, because what we're asking the jury to decide is, beyond a reasonable doubt, did this drug have the physiological effects that the medical examiners described as being the procedural process that resulted in the death. Kagan But the statute says did it result in death. It did not say the statute does not say, does not criminalize a drug that has physiological effects. It criminalizes a drug when it results in death. And you can't say anything about resulting in death except by reference to probabilities and likelihoods. I think that there is going to be testimony about probabilities and likelihoods that will inform the substantiality question, but it's not a question of likelihood that it contributed to the central nervous system depression that killed the victim here. That is unequivocal in the testimony. Roberts If you wanted to incorporate in the statute your friend's understanding of but-for cause, what word would you use that would be better than results? Well, I would you could use but-for. Roberts Well, I know, but you want a word that's going to be readily understandable to the judge. Kagan Or solely. I guess I would refer the Court to the jury instructions that the Petitioner proposed here, which are on 238, which say that the proximate cause must be one that except for the cause, the death would not have occurred. That's the instructions that are proposed there. And our point is that the insight in these sources, it's an insight that's in the Brown Commission report, it's an insight that's in the numerous cases we've cited going back, is that that is not the only test that's used. It's just that's the only test that's used. Roberts No, no, that's just, if I could get back, that's the instruction on proximate cause. What about the but-for cause? Well, the way they're structured in Petitioner's submission, it's sort of built into the proximate cause instruction. They weren't separated in the way Petitioner did it. So there's the first part of the second sentence on 238, the direct result of reasonably probable consequence, gets at what we would more conventionally describe as proximate cause, but the second part is classic causation in fact, except for the cause, the death would not have occurred. So what Petitioner's here is trying to defend is a test that produces. Breyer No, but it doesn't say, I mean, the one they quote in there, brief, all they wanted the judge to say was it could be the, if they say you're right, proximate cause, but they're interested here in is it a cause at all. And they say as long as the subject cause contributes substantially to producing the death. That's all they wanted him to say, and he didn't say it. And actually, when I read that, I thought, well, what they want is to say that it's an important factor. And rather than just saying it's some unimportant factor, and they seem, I don't know what these words really mean, but it seems they're closer to what you're saying, really. It should be the law than you are. That is a convenient excerpt from the instruction on 238, but the other part of the instruction insists that, except for the cause, the death would not have occurred. So I think the language at the bottom of it is that it's an important factor. Scalia Their position now is not that it's enough if it's an important factor. Rather, and I'd like to know your view on this, your opposing counsel contends that the courts and commentators who use the substantial factor terminology mean by a substantial factor a factor that would by itself have been sufficient. Well, there are certainly they can pull up cases that say that. But what I would emphasize for this Court is that in four briefs to this Court, Petitioner has not cited a single case that does what he's asking this Court to do, which is reject a contributing cause approach and exonerate him under a but-for test that applied to this case would lead to the conclusion that nothing and nobody caused the victim to die here. Roberts Just to get back to it, you were reading from the proximate cause instruction. They've got the very next instruction says you have to find that he died as a result of using the heroin distributed by the defendant. So I think it's a little unfair to suggest that they were willing to go with the same concept of cause that you were proposing. Well, we wouldn't we don't disagree that a court could just use the unadorned statutory language. That would not be an error to do so. Our point is only, our point is only that a contributing cause, as these courts have recognized for a long time, can be a cause in fact, particularly in these scenarios where otherwise you're going to conclude there's no cause at all. Breyer What do you want us to say? You know what's actually worrying me about this case? It took quite a long time, and there are like three levels of complexity, and we're from but-for into concurrent and then the sufficient condition and the necessary condition, and we're trying to argue whether this thing that the model penal code wouldn't even pick up in Brown ought to be the Federal law of the United States, and Professor Wexler's reaction was, look, this is hard, this is going to arrive so infrequently, it's so complicated to talk about, that you're going to mix everybody up once we start to write on this, and that is worrying me as a real problem. Once we start to write in this area, we're going to get people so mixed up, no matter what we say, that I hesitate to go backwards from the very vague and open-language substantial versus contributing, and just sort of, why not just say substantial and leave it there and let the lower courts figure this out, so we do not confuse the entire bar and the entire Congress and everybody. Shanmugam Yes. If Your Honor is concerned about that, I think you could write a decision that says the right instruction here is substantial factor. The test, the cause does not have to be a but-for test, but we're not going to go on to define substantial factor. Scalia Because of that imprecision, some poor devils will have to go to jail for a longer period than otherwise, you know, tough luck. Shanmugam Well, I think this isn't something that would catch Congress by surprise. The problem of multiple drug use is sort of a well-recognized situation. If I might turn to foreseeability for the Court. Kagan I'm not suggesting that. I understood what Ms. Campbell said, because she said substantial factor just means independently sufficient. But you're saying substantial factor can mean more than that, but it doesn't have to mean a but-for cause. How is something a substantial factor in a death without your being able to say that it was a but-for cause of the death? Shanmugam The situations that we're talking about here are ones in which nothing would be a but-for cause of the death and nothing would be independently sufficient to cause the death. But I think to some extent that's the case. Kagan So it's not a substantial factor in causing the death, because that assumes that it actually played a role in causing the death, and you can't say whether it played a role in causing the death. That's what creates this problem. Shanmugam I disagree with that. It absolutely played a role in causing the death. That is exactly what the toxicologist says. Kagan It played a role in the sense of if it hadn't been there, the death would not have occurred. You can't say that. That's the point. Shanmugam Well, that's true. But I don't think, to take my example of the assailants, the three assailants beating the victim to death, I think it would be very strange to say that none of those assailants played a role in the victim dying. None of them contributed to the victim dying. That seems to be contrary to ordinary usage and ordinary intuitions about cause and effect. Now, I agree in this situation, because we're talking about something that happens at a molecular level, it's perhaps less — it's less part of common experience and we have to rely on the doctors. But what they are saying is no different than saying that he had three drugs in there and they were each knocking him down to a state of unable to repress his gag reflex. Roberts. Roberts The problem with your hypothetical, it's the sort of thing where there's no way that a doctor could say, you know, three people beat the guy up, which one, you know, threw the fatal punch. But here we have a situation where the experts could tell you, yes, the heroin alone would have killed him, or, as in this case, I can't tell you the heroin alone would have killed him. Shanmugam Yes, I think that's right, but I can imagine a doctor similarly testifying in the three assailants situation to exactly that point. I can't tell you which is the fatal punch precisely. I agree with that. If Congress could say that. Roberts But my point is that they would not be able to tell you in any case. Well, here they can tell you in every case, whether it's clear that the heroin caused the death or not. Shanmugam That may be true, but there will be cases in which no single drug caused the death, and yet the victim died. That's what produces the problem here. Roberts Well, right, but this statute does not say if you die from taking drugs, then the person who gave you drugs is, is, who gave you any kind of drug is responsible. It says the heroin has to result, death has to result from the heroin. Shanmugam It does, and I think it's ordinarily, I think it's an ordinary usage of language to describe this as resulting from the heroin and some other things, too. But it, but the testimony is certainly to the effect that it resulted from the heroin. Kennedy What result if a heroin dealer persuades a first-time user to please try heroin? That's wonderful. He does. Three days later, the addict buys, the new addict, the new user, buys heroin from a different dealer and overdoses and dies. Does the first dealer contribute, have a substantial contributing cause? Shanmugam Contributing cause there? I guess, I guess I would need to know more medically. I, I, I, possibly yes. Kennedy No, no, the heroin has disappeared, but he's become addicted. Shanmugam Okay, so he's become addicted. I, I think possibly yes. I, I, I'm skeptical that that would be a substantial contributing cause. And then there would be, even, there would be on our view questions about proximate cause that would be raised in that situation as well. Roberts What about they give the guy the heroin and as a result, and he drives away, but as a result of using it, he's, you know, driving under the influence, has an accident and is, is killed. Is that, does his death result from the heroin in that case? Shanmugam We think in that situation, certainly factually, causation in fact, it does. In that situation, we're lying farther away from the, from the central harms of the Controlled Substances Act is addressing, and so we think you would get into some sort of proximate cause inquiry there as well that you wouldn't need to hear. Sotomayor I'm sorry, now I'm really confused. I thought you were putting the causation, the factual causation into proximate cause. You're saying there's a difference. So what do you think gets folded into proximate cause? Shanmugam So in proximate cause, our basic point on proximate cause in an overdose situation is that you already have the indicia you need to know that this is the harm for which Congress wants to hold the defendant responsible. Sotomayor In one other case, in one other case, but you are suggesting that there are cases in which there might be a proximate cause problem, you just posited to Justice Kennedy. Shanmugam Absolutely. Sotomayor What other case have we said that you don't have to charge a jury on an element of the crime, on proximate causation? Is there any in which we've ever said that? Shanmugam Well, I disagree with you. Sotomayor Because in the vast majority of cases it won't be a problem. Shanmugam I guess I have to – I guess my answer to your hypothetical has to be to disagree with the idea that this is an element. We're not dispensing with an element. The element is that a death resulted. The question is how in a particular case should a district judge explicate the scope of harms for which defendants should be held responsible. And sometimes you can do that with a foreseeability instruction. Sometimes you might do it with an intervening or superseding cause instruction or other proximate cause concepts. But in a case where you know there's an overdose at issue, and we're talking about heroin here, which is controlled in large part precisely because it kills people, you don't need to. Sotomayor So foreseeability is an element in only some ways of killing people. Shanmugam It is necessary. Sotomayor Some people die. Shanmugam It is necessary to instruct on it if we're in a situation where we're saying this is running out to infinity, that's the usual concern, the Paulsgraf type concern about foreseeability, but this is not running out to infinity. Sotomayor You know, I'm having a really hard time because of Paroline, where you basically admit that proximate cause, i.e., foreseeability, because I see them as almost interchangeable, is almost always to be charged, is almost always an element that is required when you have a results from. Shanmugam Yes. To be clear, we're not saying there's no proximate cause requirement. We are saying that there is a sufficient assurance that the function of proximate cause of limiting defendant's responsibility to the matters about which Congress is concerned is served in an overdose case when you know that you have a substance that is controlled in large part because of precisely this risk that then causes exactly that harm. Thank you.  Thank you, counsel. Ms. Campbell, you have three minutes remaining. Campbell It's our position that but-for cause is the first question. And only when you reach a point where there is no but-for cause do you then go on to say is this one of these circumstances where there is a two independently sufficient harms. If no, end of question, which was the motion for judgment of acquittal at the time of trial. There was no but-for cause. We made the motion for judgment of acquittal on but-for cause. You don't need to make that inquiry in this particular case. There may be cases where you make that inquiry. Of course, we didn't win, so we had to keep going along and we asked for a substantial factor test because we thought maybe we could influence the judge to give us a better instruction, like the substantial factor test that the Eighth Circuit had already approved, and he rejected it and gave them a contributing cause instruction, which is clearly not encompassed within the common law standards of causation, but-for-cause is a substantial factor. Now, to address the concerns about letting defendants go free, that just simply doesn't play a part in this analysis. Every criminal defendant in any of these hypotheticals would have some sort of criminal liability, either a lesser included offense. This particular defendant, Mr. Barrage, could go to prison for 20 years for the lesser included offense. You have accomplice liability. You have conspiracy. You have attempt. All of these individuals are going to be punished. You have sentencing discretion. The judge can look at the fact that there was a death, well, maybe not a primary cause in the death. There was a death and enhance the sentence under the beyond the guideline range. All of those concerns are already addressed in the criminal law, and we do not need to change the criminal law of causation and relax it to encompass more harms, because if we aren't willing to do that in the civil context where you have contributing negligence and shifting of burdens, of shifting of the costs and having your hypothetical, you have different percentages likelihood of causing the harm. So maybe you give 5 percent to the marijuana dealer and 10 percent to the oxycodone dealer and 20 percent to the heroin dealer. We don't have that in criminal law. That's a policy consideration that is different between civil law and criminal law. In criminal law, the person is going to go to prison under a mandatory minimum sentence. And in some cases for life, with no parole, based on this relaxed causation standard that the government is asking this Court to incorporate into a statute where it doesn't say it. And so we would respectfully ask for the Court not to engage in that process, not to relax causation for the criminal statute at play here and in all of the criminal statutes that youse result in, and instead rely upon the general notions of causation that are already established in the law. Thank you. Thank you, Counsel. The case is submitted.